IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JONATHAN MILLER
Prisoner No. 510680
Phillips State Prison,

          Petitioner,

v.

MICHELLE MARTIN, Warden of
Phillips State Prison,

          Respondent.

1:04-cv-1120-WSD-JFK

**OPINION AND ORDER**

This matter is before the Court on Petitioner Jonathan Miller's ("Miller") Motion for Reconsideration of Petition for Habeas Corpus [18] and Miller's Motion for Certificate of Appealability [19].

**I.    BACKGROUND**

This case involves the constitutionality of Miller's trial and conviction for felony murder, aggravated assault, and aggravated battery, and his sentence of life with the possibility of parole for that conviction.[1]  Miller was convicted of felony

---

[1] Although Miller was convicted of felony murder, aggravated assault, and aggravated battery, the aggravated assault and aggravated battery charges merged into the felony murder charge for sentencing purposes.  Thus, Miller's sentence reflects only his conviction for felony murder.  Miller's sentence is the lightest

murder for killing thirteen year-old Joshua Belluardo ("Belluardo") with a single blow to the back of Belluardo's head.  Miller was fifteen years old at the time of the crime.  Miller was charged in the Cherokee County juvenile court with aggravated assault and aggravated battery.  Belluardo later died.  On December 14, 1998, Miller was indicted in the Superior Court of Cherokee County for felony murder, aggravated assault, and aggravated battery.  Miller v. State, 571 S.E.2d 788, 731 n.1 (2002); (R. 74).  On December 15, the juvenile court judge ordered the juvenile complaint against Miller to be dismissed.[2]  (Suppl. To Amd. Br. by the District Atty. of the Blue Ridge Cir., April 29, 2002, at Ex. 1.)

On May 7, 1999, the Superior Court convicted Miller of felony murder, aggravated assault, and aggravated battery.  The assault and battery convictions merged into the felony murder conviction for sentencing purposes.  Miller was sentenced to life imprisonment with the possibility of parole.

---

sentence allowed by Georgia's felony murder statute.

[2] The juvenile intake officer in Miller's case recommended that the judge dismiss the complaint because "the case is to be prosecuted in Superior Court." (Intake Officer Report of November 12, 1998).  The judge dismissed the case by approving that recommendation on December 15.

Miller appealed to the Georgia Supreme Court, which affirmed his conviction and sentence. Miller then filed a habeas petition in this Court on April 22, 2004. On February 24, 2006, Magistrate Judge Janet King issued her Report and Recommendation that the Court deny Miller's habeas petition (the "R&R"). Miller objected to the R&R on several grounds. On February 26, 2007, the Court considered *de novo* the issues to which Miller objected and, in a lengthy opinion, concluded that Miller's petition should be denied ("February 26 Order").

Miller filed the present motions requesting that the Court reconsider portions of the February 26 Order or grant him leave to appeal to the Eleventh Circuit. Miller specifically asks the Court to reconsider its finding that there was no constitutional error when the Cherokee County Superior Court filed aggravated assault and aggravated battery charges in the absence of a transfer hearing conducted by the juvenile court. For the reasons stated below, the Court reconsiders its reasoning in the February 26 Order.

Miller argues that once the juvenile court took jurisdiction over the aggravated assault and aggravated battery charges, he could not be tried on those charges in the Superior Court unless the juvenile court first held a transfer hearing. That is, although Miller does not dispute that the felony murder charge was

properly and necessarily brought in the Superior Court, he argues that the aggravated assault and aggravated battery charges on which that felony murder charge was based were informally transferred from the juvenile court to the Superior Court in violation of the due process to which he was entitled to under Georgia statute and the United States Constitution.

Although Miller raises a substantial and compelling argument that his due process rights were violated, the fact remains that he was effectively sentenced only for the felony murder charge, which was properly before the Supreme Court. Thus, although Miller's constitutional rights were violated, any error was harmless.

**II.    STANDARD ON MOTION FOR RECONSIDERATION**

Under the Local Rules of this Court, "Motions for reconsideration shall not be filed as a matter of routine practice." Local Rule 7.2E. Such motions should not be filed unless "absolutely necessary . . . ." Id. Reconsideration is "absolutely necessary" only where there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003). Because of the nature of this case, the Court will consider whether it has made an

error of law or fact in accordance with the issues raised in Miller's motion for reconsideration.

## III.   DISCUSSION

### A.   The Juvenile Court Transfer

#### 1.   *Constitutional Error*

Miller argues that his Fifth Amendment due process rights and Eighth Amendment rights were violated when the Superior Court assumed jurisdiction of the aggravated assault and aggravated battery charges without a transfer hearing held by the juvenile court.  Miller notes, correctly, that he briefed this issue before the Georgia Supreme Court, but that court did not address it.

The R&R and this Court's February 26 Order addressed the constitutionality of the Superior Court's jurisdiction over the felony murder charge.  Miller argues that both the R&R and the February 26 Order, like the Georgia Supreme Court, overlooked his argument that the Superior Court had no jurisdiction over the aggravated assault and aggravated battery charges, which were in the exclusive jurisdiction of the juvenile court and never properly transferred.  This issue merits further discussion by this Court.

Georgia law provides a statutory framework for the jurisdictional interaction of its juvenile and general courts. Except for specific statutory exceptions, juvenile courts have "exclusive original jurisdiction over juvenile matters and shall be the sole court for initiating action . . . concerning any [delinquent] child . . . ." O.C.G.A. § 15-11-28(a). Superior courts have exclusive jurisdiction over juveniles charged with murder, including felony murder, voluntary manslaughter, rape, aggravated sodomy, aggravated child molestation, aggravated sexual battery, or armed robbery with a firearm. Id. § 15-11-28(b)(2)(A). See also Miller v. State, 571 S.E.2d 788, 793-94 (Ga. 2002). The juvenile and superior courts have concurrent jurisdiction over children alleged to have committed acts "which would be considered a crime if tried in a superior court and for which the child may be punished by loss of life, imprisonment for life without possibility of parole, or confinement for life in a penal institution." O.C.G.A. § 15-11-28(b)(1).

For matters of concurrent jurisdiction, "the first court to take jurisdiction will retain it." In the Interest of J.D., 395 S.E.2d 280, 281 (Ga. Ct. App. 1990) (citation omitted). When superior courts assert first jurisdiction over capital charges in their exclusive jurisdiction, they are also permitted to assert a common-law form of ancillary concurrent jurisdiction over lesser crimes from the same

transaction, even if those crimes would normally lie in the exclusive jurisdiction of the juvenile court.  See Seabolt v. State, 616 S.E.2d 448, 450 (Ga. 2005) ("The concurrent jurisdiction of the superior court over capital felonies committed by juveniles must necessarily extend to related lesser crimes which are part of the same criminal transaction.").

Once either court takes first jurisdiction over a charge, "its jurisdiction [is] exclusive, unless and until the case [is] properly transferred . . . ." In the Interest of J.D., 305 S.E.2d at 281.  Thus, if the juvenile court takes jurisdiction over a matter, it "may not transfer . . . to an appropriate court having jurisdiction without first hearing evidence . . . ." J.G.B. v. State, 220 S.E.2d 79, 81 (Ga. Ct. App. 1975).  In other words, even if the superior court has statutory concurrent jurisdiction over a matter, it lacks any jurisdiction over matters first taken up by the juvenile court. State v. Sullivan, 516 S.E.2d 539, 540 (Ga. Ct. App. 1999).  A "proper transfer" is a transfer occurring according to O.C.G.A. § 15-11-30.2.  That statute requires that the juvenile court conduct a transfer hearing prior to transferring matters in its jurisdiction.  Id.

In this case, the juvenile court was the first to take jurisdiction by filing a petition of delinquency for aggravated assault and aggravated battery, the charges

which applied until Belluardo died. These charges are within the exclusive jurisdiction of the juvenile court.[3] While the aggravated assault and aggravated battery charges were pending in the juvenile court, Belluardo died and Miller was then indicted in the Superior Court for felony murder, aggravated assault, and aggravated battery. The felony murder charge was predicated on the felonies of aggravated assault and aggravated battery. The next day, after the Superior Court's indictment against Miller was filed, the juvenile court dismissed its petition of delinquency against Miller. The Superior Court proceeded to try all three charges.

Had the Superior Court first asserted jurisdiction over the aggravated assault and aggravated battery charges as part of the felony murder indictment, its action would have been within the scope of its jurisdiction. The juvenile court, however, first asserted jurisdiction over the aggravated assault and aggravated battery charges. The juvenile court did not hold a transfer hearing as required by O.C.G.A. § 15-11-30.2. Instead, the Superior Court merely asserted overlapping charges in its indictment and the juvenile court dropped its complaint. Thus, while the Superior Court indicted Miller properly for felony murder, it had no

---

[3] Aggravated assault has a maximum sentence of twenty years. O.C.G.A. § 16-5-21(b). Aggravated battery has a statutory maximum sentence of twenty years. O.C.G.A. § 16-5-24(b).

-8-

jurisdiction to indict him for aggravated assault and aggravated battery until the juvenile court held a transfer hearing.  Sullivan, 516 S.E.2d at 540.  The juvenile court never held such a hearing.

Juveniles "have a due process right to any 'procedures and benefits' granted to them by state statute . . . ."  (February 26 Order at 11.)  See also Kent v. United States, 383 U.S. 541, 557 (1996).  The transfer hearing required by Georgia statute with respect to the aggravated assault and aggravated battery charges was not held, violating Miller's due process rights.

### 2. *Harmless Error Analysis*

Denials of constitutional rights do not automatically result in a reversal of conviction.  Chapman v. California, 386 U.S. 18, 22 (1967).  The Supreme Court has "repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless . . . ."  Rose v. Clark, 478 U.S. 570, 576 (1986).  The law distinguishes between "structural" errors, which require reversal, and "trial" errors, which are subject to harmless error analysis.  Brecht v. Abrahamson, 507 U.S. 619, 629 (1993). "[B]efore a federal constitutional error can

be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Id. at 630.

Structural errors manifest an "extreme deprivation of constitutional rights" affecting "the framework within which the trial proceeds." United States v. Smith, 240 F.3d 927, 930 n.5 (11th Cir. 2001). Structural errors "implicate the basic protections [without which] a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may regarded as fundamentally fair." United States v. Suescun, 237 F.3d 1284, 1288 n. 12 (11th Cir. 2001). Examples of structural error include "deprivation of the right to counsel, the unlawful exclusion of members of the defendant's race from a grand jury, the right to self-representation at trial, and the right to public trial." Id.

The Superior Court's improper assertion of the aggravated assault and aggravated battery charges does not constitute a structural error.[4] Any error in this regard had no effect on the outcome of Miller's case. Even if the Superior Court had refused to accept the aggravated assault and aggravated battery charges because they had not been properly transferred, the felony murder charge based on

---

[4] This case presents a unique set of facts and the present holding is limited to those facts. The Court does not hold as a general matter that jurisdictional errors are not structural.

aggravated assault and aggravated battery would have been properly before the Superior Court, would have been proved by the same evidence, and Miller would have suffered the same conviction and the same sentence.

The juvenile and Superior courts could not have carried on separate prosecutions of Miller's conduct in both the juvenile and superior courts; one court was required to hear all of the charges stemming from his attack on Belluardo. See State v. Brittain, 249 S.E.2d 679, 679-680 (Ga. Ct. App. 1978) ("If the several crimes arising from the same conduct are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution . . .") (quotation omitted). Because felony murder was one of the charges against Miller, the Superior Court was the only court that could assume jurisdiction of all of the crimes arising from his conduct.

Further, Miller was sentenced solely on the felony murder conviction, into which the assault and battery convictions merged. Miller's sentence was not enhanced due to the aggravated assault or aggravated battery charges, rather, Miller was given life with the possibility of parole, the most lenient sentence

permitted by the felony murder statute. The error thus did not effect Miller's Eighth Amendment right against excessive punishment.[5]

The error also did not effect the elements of the State's case, its burden of proof, the evidence presented to the jury, or any part of Miller's defense. Regardless of whether Miller was charged with the underlying felonies, the State was required to prove the elements of an underlying felony to secure a felony murder conviction. Georgia law does not require that the underlying felony be charged for a felony murder conviction to stand. State v. Jones, 553 S.E.2d 612, 615 (Ga. 2001). Thus, had the Superior Court not indicted Miller for aggravated assault and aggravated battery, the State could nonetheless have convicted him for felony murder by showing the same elements of proof and presenting the same evidence to the jury.

The Court found in the February 26 Order that the evidence presented at Miller's trial would permit a reasonable juror to find beyond a reasonable doubt the

---

[5] The improper imposition of aggravated assault and aggravated battery charges had no effect on Miller's sentence. Under Georgia law, felony murder is punishable by "death or by imprisonment for life." O.C.G.A. § 16-5-1. Miller was sentenced to life with the possibility of parole, which is the most lenient sentence permitted for a felony murder conviction. It is thus clear that the aggravated assault and aggravated battery convictions played no aggravating role in Miller's sentence.

elements of aggravated battery. (February 26 Order, 32-34.). The outcome of Miller's trial thus would have been the same even if the Superior Court had not charged Miller with aggravated assault and aggravated battery.

    B.    <u>Certificate of Appealbility</u>

Miller seeks a certificate of appealability ("COA") of this Court's February 26 Order. Because Miller seeks habeas relief from detention arising out of process issued by a state court, he cannot appeal this Court's order unless he receives leave to do so in the form of a COA. 28 U.S.C. § 2253(c)(1)(A). The Court may issue a COA only if Miller "has made a substantial showing of the denial of a constitutional right." <u>Id.</u> § 2253(c)(2). "The COA determination . . . requires an overview of the claims in the habeas petition and a general assessment of their merits." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003). Miller must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Id.</u> (citation and quotation omitted).

As discussed above and in the February 26 Order, Miller has made a substantial showing of the denial of several of his constitutional rights. Miller has substantially shown his due process rights were violated by the Superior Court's

assumption of the aggravated assault and aggravated battery charges without a transfer hearing in the juvenile court. The Court also found in the February 26 Order that Miller's due process rights were violated by the jury charges in this case, which permitted Miller to be convicted of felony murder based on the aggravated assault charge without requiring a finding of felonious intent. Although the Court found both these errors harmless, these conclusions were not reached easily.

Based on the nature of the issues presented by Miller's petition, the Court grants a certificate of appealability as to the following issues:

- Did Georgia violate Miller's Fifth Amendment due process rights or Eighth Amendment right to be free from cruel and unusual punishment when the Superior Court assumed jurisdiction of the aggravated assault and aggravated battery charges without a transfer hearing in the juvenile court, and, if constitutional error occurred, was it harmful?

- Did the pre-trial publicity in Miller's case, including the occurrence of the Columbine school shooting incident shortly before his trial, create a constitutionally unfair atmosphere for his trial such that it was a violation of

Miller's due process rights for the court to deny his motions for continuance and change of venue?

- Did the <u>Sandstrom</u> error at Miler's trial violate his due process rights by allowing him to be convicted of felony murder when: 1) the jury made no specific finding as to which underlying felony they used as a predicate for the felony murder conviction; and 2) the jury charge for one of the underlying felonies (aggravated assault) was constitutionally defective?

- Is Miller's claim that his sentence violates the Eighth Amendment adequately preserved for review, and, if so, does the sentence of life with the possibility of parole constitute cruel and unusual punishment when levied against a 15-year old who caused a death but was not proven to have an intent to kill or injure seriously the victim?

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Motion for Reconsideration [18] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for a Certificate of Appealability [19] is **GRANTED** consistent with the terms of this Order.

**SO ORDERED** this 20th day of August, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE